IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JASON M. VAUGHN, 425866 *

    Plaintiff, *

v. * Civil Action No. JFM-17-1155

WEXFORD HEALTHCARE SOURCES *

    Defendant. *
\*\*\*\*\*

**MEMORANDUM**

On April 26, 2017, the court received for filing Jason Vaughn's self-represented 42 U.S.C. § 1983 civil rights action. Vaughn seeks injunctive relief and $150,000.00 in damages from Wexford Healthcare Sources. Pending are Wexford Health Sources' (Wexford")[1] unopposed motion to dismiss or in the alternative, for summary judgment.[2] ECF No. 13.

The matter is ready for disposition; no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2016). For reasons that follow, defendants' motion, construed as a motion for summary judgment, IS GRANTED.

### I. Background

Vaughn, who is confined in the Dorsey Run Correctional Facility (DRCF), alleges that he suffered a spider bite in early April of 2017 which, without proper treatment, became infected

---

[1] The court takes judicial notice that Wexford is the private entity contracted by the Department of Public Safety and Correctional Services to provide medical care to state inmates.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on July 21, 2017, the Clerk of Court informed Vaughn that defendant had filed a dispositive motion; that he had seventeen days in which to file a written opposition to the motion; and that if Vaughn failed to respond, the claim against defendant could be dismissed without further notice. ECF No. 14. Vaughn has not filed an opposition.

and swollen. *Id.*, pp. 2-6. The complaint was signed on April 24, 2017, approximately three weeks after Vaughn states he suffered his injury.

## II. Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

Because defendant has filed and relied on an affidavit and exhibits attached to its dispositive motion, the motion shall be treated as a summary judgment motion.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

2

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to...the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

Because Vaughn is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized

by statute and imposed by a criminal judgment." *De'lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious.[3] *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicted...becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer*,

---

[3] A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241, citing to *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999).

4

511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown*, 240 F. 3d at 390, citing *Liege v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

### IV. Analysis

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Vaughn has failed to point to any personal conduct by Wexford, in regard to the matters alleged in his complaint. His effort to hold Wexford liable based on its supervisory role is unavailing. It is entitled to dismissal.

Moreover, Vaughn has failed to demonstrate the health care personnel were deliberately indifferent to a serious medical need. The exhibits provided by Wexford indicate that Vaughn is

5

a thirty-eight year old male with a medical history significant for allergic rhinitis, hypertension, testicular malignancy, Hepatitis C virus (HVC) infection, chronic kidney disorder, lumbago, urinary tract infection (UTI), lymphadenitis, obesity, and anxiety disorder. ECF No. 13-4, pp. 1-3. On March 23, 2017, when Vaughn was seen in the Chronic Care Clinic (CCC) by Dr. Onabajo, he claimed he was getting a UTI, complained of left second toe pain, and sought insoles. *Id.* On April 5, 2017, Vaughn was seen by Dr. Onabajo for an unscheduled provider visit. He complained of three days of increased pain, swelling, and diffused redness of the right foot, with accompanying difficulty in walking or weight bearing on the right foot. *Id.*, pp. 5-6. He was admitted to the regional infirmary at the Jessup Correctional Institution (JCI). The following day, he was seen by Physician's Assistant (PA) Carpenter, who noted Vaughn's medical history and assessed him with a right foot abscess. A doctor recommended that Vaughn be sent to Bon Secours Hospital's (BSH) emergency room given the location of the lesion. Oral pain medication and antibiotics were provided and Vaughn was sent to BSH. *Id.*, pp. 7-8.

Vaughn's foot was x-rayed and a CT of the foot was conducted at BSH. The tests revealed "soft fusiform" tissue swelling over the dorsum of the right foot and ankle, as well as skin thickening and subcutaneous edema involving the right foot and ankle. There was no discrete focal collection to indicate an abscess. Vaughn underwent an incision and drainage (I & D) of the right foot by a physician. It was also determined that Vaughn had a UTI. An onsite surgical follow up was recommended for one week. Vaughn was discharged from BSH to the JCI infirmary on April 7, 2017. *Id.*, pp. 9-21.

On April 8, 2017, Vaughn was seen by an on-site physician, Dr. Onabajo, who verbally prescribed piperacillin/taxobactam (ZOSYN), vancomycin, senna, and

6

oxycodone/acetaminophen.[4] He was seen that same day by another physician, Dr. Sisay. Vaughn's toes were not found to be discolored and his foot was dressed. He was seen over the course of the next three days. No change was made to Vaughn's plan of care, no report of fever or chills was made, and Vaughn was observed sleeping, watching television, and talking, all without any visible signs of distress. He was diagnosed with cellulitis of the right foot. He was to continue on antibiotics, to taper off the opiate, and to have Motrin added to his regimen. ECF No. 14-4, pp. 22-35.

On April 12, 2017, Vaughn was seen by PA Carpenter. His antibiotics were discontinued and he was discharged to DRCF on April 13, 2017. *Id.*, pp. 36-37. On April 13, 2017, was seen by Dr. Agrawal for an on-site surgical follow–up appointment. It was observed that Vaughn was "doing well," and the wound was granulating, without cellulitis. No fever, chills or edema was found. A recommendation was made to treat the wound with gel or bacitracin to the open wound daily, to keep it wrapped, and to follow up via tele medicine in one month. ECF No. 13-4, p. 38 and ECF No. 13-5, Onabajo Aff. On April 13, 2017, Vaughn was seen at DRCF by Nurse Ajuwon and made his first complaint that he was bitten by a spider. The dressing to the surgical site was changed. ECF No. 13-4, pp. 42-43. On April 14, 2017, Vaughn was seen by Nurse Sage for a dressing change. Moderate serosanguinous (blood and serous fluid) drainage was noted and cleaned. No redness, pitting or streaking was found near the wound site. Vaughn was given night-time pain medication. *Id.*, pp. 44-45.

---

[4] Zosyn is used to treat many different infections caused by bacteria, such as UTI, bone, joint, stomach and skin infections, as well as pneumonia. *See* https://www.drugs.com/zosyn.html. Vancomycin is used to treat serious bacterial infections. It is an antibiotic that works by stopping the growth of bacteria. *See* http://www.webmd.com/drugs/2/drug-939/vancomycin-intravenous/details. Senna is a natural medicine that is used as a laxative and aide to treat constipation. *See* https://www.drugs.com/senna.html. Oxycodone is an opioid pain medication. *See* https://www.drugs.com/oxycodone.html.

On June 14, 2017, Vaughn was seen by Dr. Wright for an unscheduled provider visit to complain of painful swelling in his right ankle, with difficulty walking for four days. He had no fever or chills. A subjective examination noted painful swelling in Vaughn's right foot with moderate pain on motion. His prior medical history of gout was noted and he was assessed with gouty arthropathy.[5] He was to follow up in seven to ten days if there was no improvement. ECF No. 13-4, pp. 47-48.

Vaughn has been called upon to refute the medical record and a physician's affidavit to show that his complaints regarding pain and swelling to his right foot and ankle were ignored. He has failed to so do. The materials show that Vaughn received immediate care in the form of radiology testing, a surgical procedure, antibiotic treatment, pain medication and follow-up treatment. No deliberate indifference has been demonstrated. Defendant is otherwise entitled to summary judgment in this case. Judgment will be entered in favor of defendant in a separate Order to follow.

Date: August 2, 2017

                                                                            J. Frederick Motz
United States District Judge

---

[5] Gouty arthropathy is a medical term that defines a disease caused by the formation of uric acid crystals in a joint space. Arthropathy is the definition of any type of joint disease. *See* faoconline.com/home/conditions/general/gouty-arthropathy.

8